**FILED**
**U.S. DISTRICT COURT**
**EASTERN DISTRICT ARKANSAS**

**MAY 1 9 2023**

**TAMMY H. DOWNS, CLERK**

By:_____
**DEP CLERK**

**FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT**
<u>UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983</u>
BIVENS AND FTCA
**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
LITTLE ROCK DIVISION

**CASE NO.** 2:23-cv-00122-BSM-JJV

**Jury Trial:** ☑ Yes ☐ No
**(Check One)**

I.    Parties

In item A below, place your <u>full</u> name in the first blank and place your present address in the second blank.  Do the same for additional plaintiffs, if any.

A.    Name of plaintiff: STEPHEN CHRIS PLUNKETT
USMS# 36265-177

Address: FCC FORREST CITY - MEDIUM, 1501 DALE BUMPERS RD.
FORREST CITY, AR 72335

Name of plaintiff: _____
ADC # _____

Address: _____

Name of plaintiff: _____
ADC # _____

Address: _____

In item B below, place the <u>full</u> name of the defendant in the first blank, his official position in the second blank, his place of employment in the third blank, and his address in the fourth blank.

B.    Name of defendant: TIMOTHY C. WARD (Commissioner, Georgia DOC)

Position: Commissioner (Official & Individual)

Place of employment: Georgia Department of Corrections

Address: 300 PATROL RD., FORSYTH, GA 31029

Name of defendant: DAMON HENNINGER (Individual)

Position: CEO, CoreCivic, Inc.

This case assigned to District Judge <u>Miller</u>
and to Magistrate Judge <u>Volpe</u>

Place of employment: CoreCivic, Inc. Contractor for GDOC

Address: _____

Name of defendant: William Danforth

Position: Warden

Place of employment: Coffee Correctional Facility (CoreCivic, Inc. under contract with the GDOC)(at time of events at issue)
Address: 1153 N. Liberty St., Nicholls, GA 31554

Name of defendant: Kasenya (Kasonya) Johnson

Position: Shift Supervisor (Captain)

Place of employment: Coffee Correctional Facility (See above, same).

Address: 1153 N. Liberty St., Nicholls, GA 31554

II.    Are you suing the defendants in:

☐    official capacity only
☐    personal capacity only
☒    both official and personal capacity

III.    Previous lawsuits

A.    Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes <u>xx</u>    No ___

B.    If your answer to A is yes, describe the lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

☒    Parties to the previous lawsuit:

Plaintiffs: Stephen Chris Plunkett

_____

Defendants: Fani Willis, DA Atlanta Judicial Circuit (GA); Paul Howard, Former DA AJC (GA); Patrick Labat, Fulton County (GA) Sheriff; Fulton County (GA) _____

☐     Court (if federal court, name the district; if state court, name the county):

   Fulton County Superior Court

☐     Docket Number: TBD

☐     Name of judge to whom case was assigned: TBD, On Desk Since Jan. 10

☐     Disposition: (for example: Was the case dismissed? Was it appealed?
Is it still pending?) Pending Filing Screen by Judge

☐     Approximate date of filing lawsuit: Mailed 11/22/22. Rec'd by Clerk 1/10/23.

☐     Approximate date of disposition: As of March 15, 2023 On Judge Desk

IV.     Place of present confinement: FCC Forrest City - Medium
1400 Dale Bumpers Rd.
Forrest City, AR 72335

V.     At the time of the alleged incident(s), were you:
(check appropriate blank)

   xx    in jail and still awaiting trial on pending criminal charges

   xx    serving a sentence as a result of a judgment of conviction

   xx    in jail for other reasons (e.g., alleged probation violation, etc.)
explain: See Complaint and Notice, To Illegally Extend
Incarceration.

VI.     The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, requires complete exhaustion of administrative remedies of all claims asserted, prior to the filing of a lawsuit. There is a prisoner grievance procedure in the Arkansas Department of Correction, and in several county jails. Failure to complete the exhaustion process provided as to each of the claims asserted in this complaint may result in the dismissal without prejudice of all the claims raised in this complaint.

A.     Did you file a grievance or grievances presenting the facts set forth in this complaint?

Yes xx    No ____    In some cases, yes. See also filed 2241 &
Bivens Action recently filed in this Court.

B.     Did you completely exhaust the grievance(s) by appealing to all levels within the grievance procedure? In some cases, yes. However, my ability to pursue Administrative Remedy is being obstructed (See Complaint and 2241 filed) any substantive access to Administrative Remedy is denied. It is futile for me to pursue further. Submitted FTCA Claim with agencies contemporaneously.

I(B). DEFENDANTS Cont.

Assistant Shift Supervisor Rickutson
Assistant Shift Supervisor (Lieutenant)
Coffee Correctional Facility (See above, same)
1153 N. Liberty St., Nicholls, GA 31554

Corrections Officer Hargrove
Correctional Officer
Coffee Correctional Facility (See above, same)
1153 N. Liberty St., Nicholls, GA 31554

Corrections Officer Sailem
Correctional Officer
Coffee Correctional Facility (See above, same)
1153 N. Liberty St., Nicholls, GA 31554

Merrick Garland
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, Washington, DC 20530

Christopher Asher Wray
Director
Federal Bureau of Investigation
935 Pennsylvania Avenue, Washington, DC 20534

Director Donald W. Washington
United States Marshals Service
1215 S. Clark St., Arlington, VA 22201

William Barr
Former Attorney General of the United States
Unknown
To Be Discovered

Warden Ted Philbin                    Warden Garrett
Warden                                Warden
Augusta State Medical Prison          FCC Forrest City
3001 Gordon Hwy., Grovetown, GA 30813 1400 Dale Bumpers Rd., Forrest City, AR
                                      72335

Unknown Male Doe in Plain Clothes
Unknown- To Be Discovered
Augusta State Medical Prison / Unknown
Unknown - To Be Discovered

CERT Team Doe #1
CERT Corrections Officer
Augusta State Medical Prison
3001 Gordon Hwy., Grovetown, GA 30813

CERT Team Doe #2
CERT Corrections Officer
Augusta State Medical Prison
3001 Gordon Hwy., Grovetown, GA 30813

III(B). Previous Lawsuits Cont.

Parties: Stephen Christopher Plunkett, Plaintiff
         Defendants - Warden, FCC Forrest City, Merrick Garland, et al.
Court:   United States District Court for the Eastern District of AR
Docket No. TBD
Name of Judge: TBD
Disposition: Pending, In Transit at time of this writing.
Approximate Date of Filing: May 9, 2023 Placed in FCC Forrest City Mail
Approximate Date of Disp.: As of May 11, 2023, in Transit


PARTIES: STEPHEN CHRISTOPHER PLUNKETT, PLAINTIFF
         DEFENDANTS - UNITED STATES DEPT. OF JUSTICE, USMS, FBOP, EOUSA, FBI
COURT: US DIST. CT. DISTRICT OF DC
DOCKET No.: 1:21-CV-1232 (JEB)
NAME OF JUDGE: JAMES BOASBERG
DISPOSITION: ONGOING - FOIA, BUT SEE ECF DOC. 14 FOR RELATED CLAIMS. UNDER FTCA
APPX DATE OF FILING: MAY, 2021

Yes <u>xx</u>    No <u>xx</u>

If not, why?  <u>See aforementioned.</u>

_____

VII.   Statement of claim

State here (as briefly as possible) the <u>facts</u> of your case.  Describe how each defendant is involved.  Include also the names of other persons involved, dates, and places.  Do not give any legal arguments or cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets if necessary.)

<u>          See attached Complaint and Notice          </u>

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

VIII.   Relief

State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite
no cases or statutes.

See attached Complaint and Notice

I declare under penalty of perjury (18 U.S.C. § 1621) that the foregoing and aforementioned
is true and correct.

Executed on this 11 th day of _____ May _____, 20 23 .

IN BLUE INK

5/11/23

Signature(s) of plaintiff(s)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

STEPHEN CHRISTOPHER PLUNKETT §
§
§
v. §        CASE NO. TBD
§
TIMOTHY C. WARD, DAMON HENNINGER, §
WILLIAM DANFORTH, KASENYA JOHNSON §
WARDEN DOE (ASMP), OFFICERS DOE §
(ASMP), CoreCivic, Inc., MERRICK §
GARLAND, CHRISTOPHER WRAY, UNITED §
STATES MARSHALS SERVICE , JOHN DOE §
(ASMP) §

SWORN COMPLAINT PURSUANT TO 42 U.S.C. § 1983, BIVENS, AND FTCA

1.

On December 1, 2021, Defendants Timothy C. Ward, Damon Henninger, William Danforth, and Kasenya Johnson, CoreCivic, Inc., Merrick Garland, USMS, Wray and Doe, did conspire with malicious intent to harm and inflict pain, and possibly death, to assault Plaintiff with OleoCapsaicin Resin Spray.

Defendant Kasenya Johnson did exert an escessive and abusive level of force upon Plaintiff on December 1, 2021 by spraying Plaintiff with OleoCapsaicin Resin Spray with malicious intent to inflict harm, pain, and possible death. As related to Plaintiff, due to Plaintiff's medical history of respiratory and cardiac disease, the application of OleoCapsaicin Resin (OCR) Spray is potentially, knowingly, deadly force.

Defendant Johnson carried out said use of excessive force in conspiracy with, and at the behest of, Defendants Ward, Henninger, Danforth, CoreCivic, Inc., Merrick Garland, USMS, Chris Wray and Doe . Defendants Ward, Henninger, Danforth, and Assistant Director of Operations Rick

Stone approved and directed the use of malicious and excessive deadly force upon Plaintiff in retaliation for Plaintiff's exercise of his 1st Amendment right to redress grievances with the Government. This Application of excessive and malicious deadly force was further directed by Merrick Garland, Christopher Wray, and USMS and other currently unknown but who will be identified through Discovery.

This application of excessive force was captured on the facility's (Coffee Correctional Facility operated by CoreCivic, Inc. pursuant to contract with the Georgia Department of Corrections) cameras in the "intake" area of the facility as well as portable cameras operated by unknown staff on the date of this incident.

Through this application of force, Plaintiff was robbed of all of his legal mail and legal work which has never been returned to Plaintiff. At time of application, Plunkett was cuffed behind bars.

Said application of malicious and excessive deadly force is shocking to the conscience and is in violation of the Constitutions of the United States and the State of Georgia's prohibitions against cruel and unusual punishment and due process as well as Georgia statutory tort law and, possibly, the Federal Tort Claims Act.

2.

On or about December 10, 2021, Defendants Timothy C. Ward, Damon Henninger, William Danforth, Ricky Stone, Kasenya Johnson, and Core-Civic, Inc., Merrick Garland, Chris Wray, Rick Stone, and USMS did conspire, with malicious intent to harm and inflict pain and/or death, to assault Plaintiff with OleoCapsaicin Resin (OCR) Spray.

Defendant Kasenya Johnson did, on or about that date, exert an excessive and abusive level of force unnecessarily upon Plaintiff by unnecessarily spraying Plaintiff with OCR Spray with malicious intent

to inflict harm, pain, and possible death on Plaintiff. As related to Plaintiff, due to Plaintiff's medical history of respiratory and cardiac disease, which was and is known to Defendants, the application of OCR Spray would have been known to Defendants to be potentially lethal to Plaintiff, which equals the use of deadly force, knowingly and unnecessarily against Plaintiff.

Defendant Johnson carried out said use of excessive force in conspiracy with, and at the behest of, Defendants Ward (as Commissioner of the Georgia Department of Corrections), Henninger (as CEO of Defendant CoreCivic, Inc.), Danforth (as Director of Operations or "Warden" of Coffee Correctional Facility), Stone (as Assitant Director of Operations or "AW" of Coffee Correctional Facility), CoreCivic, Inc. (a Corporation with headquarters in Tennessee), who acted at the direction of Defendants Garland, Wray, USMS, and others unknown.

Defendants Ward, Henninger, Danforth, Stone, CoreCivic, Inc., Garland, Wray, USMS, and others unknown , approved and directed the use of malicious and excessive deadly force unnecessarily upon Plaintiff in retaliation for Plaintiff's exercise of his 1st Amendment right to redress grievances with the Government. This Application of excessive and malicious deadly force was further directed by others currently unknown to Plaintiff who, through the use of Discovery, will be identified and added as parties hereto.

This application of excessive force was captured on Coffee Correctional Facility's (Operated by CoreCivic, Inc. pursuant to contract with the Georgia Department of Corrections) cameras in the "old seg" area of the facility in Cell 101 as well as portable cameras operated by unknown staff on the date of this incident.

The herein described application of malicious and excessive dead-

ly force unnecessarily is shocking to the conscience. The herein described conduct is in violation of the Constitutions of the United States and the State of Georgia's prohibitions against cruel and unusual punishment and due process as well as Georgia statutory tort law and, possibly, the Federal Tort Claims Act.

4.

On or about January 6, 2022, Defendants Timothy C. Ward, Warden Doe, Certified Emergency Response Team ("CERT") Officer Does, and others, both whom were present at the incident, but unknown, and were acting remotely and unknown to Plaintiff, did conspire, with malicious intent to inflict harm, pain, and/or death, to assault Plaintiff with OCR Spray of a much higher concentration than used on the previously-described occasions.

Defendants CERT Officer Does did, on or about that date, exert an excessive and abusive level of force unnecessarily upon Plaintiff by unnecessarily spraying Plaintiff with OCR Spray of a very high concentration with malicious intent to inflict harm, pain, and possible death on Plaintiff. As related to Plaintiff, due to Plaintiff's medical history of respiratory and cardiac disease, which was and is known to Defendants, the application of OCR Spray, particularly of such a high concentration, would have been known to Defendants to be potentially lethal to Plaintiff, which equals the use of deadly force knowingly, and unnecessarily, against Plaintiff.

Defendants CERT Officer Does carried out said use of excessive force in conspiracy with, and at the behest of, Defendants Ward (as Commissioner of the Georgia Department of Corrections), Warden Doe (as Warden of Augusta State Medical Prison), Garland, Wray, USMS, an unknown male Doe on camera, and others currently unknown to Plaintiff.

Defendants Ward, Warden Doe, unknown Doe present, Garland, Wray, USMS, etc.. approved and directed the use of malicious and excessive deadly force unnecessarily upon Plaintiff with a higher concentration OCR Spray because prior attempts with the lower concentration OCR Spray, by Defendant Kasenya Johnson in CoreCivic, Inc. facilities, did not accomplish their intended result: death of Plaintiff. All of this conduct was directed in retaliation for Plaintiff's exercise of his 1st Amendment rights of redress and access to the courts of the States and the United States. This application of excessive and malicious deadly force was further directed by others currently unknown to Plaintiff who, through the use of Discovery, will be identified and added as parties hereto. Incident Report does not reflect UOF.

Said application of excessive and deadly force was captured on Augusta State Medical Prison's cameras in its CSU Unit as well as on portable cameras operated by unknown staff on the date of this incident.

The herein described application of malicious and excessive deadly force unnecessarily is shocking to the conscience. The herein described conduct is in violation of the Constitutions of the United States and the State of Georgia's prohibitions against cruel and unusual punishment and due process as well as Georgia statutory tort law and, possibly, the Federal Tort Claims Act dependent upon from whom these requests and authorizations were received.

5.

Defendants Ward, Henninger, CoreCivic, Inc., Danforth, Garland, Wray, USMS, and others unknown  are responsible for the Malicious Prosecution of P aintiff in Fulton County, GA in case number 14SC127683. In retaliation for Plaintiff's exercise of his 1st

Amendment rights of redress and access to the courts, Defendants Ward, Henninger, CoreCivic, Inc., Warden Danforth, William Barr, Chris Wray, USMS, and others  contacted Atlanta Judicial Circuit District Attorney Paul L. Howard and had Mr. Howard reinstate charges which had been previously placed upon the Georgia dead docket. Said charges were brought without probable cause in the first instance and, none-the-less, by February of 2020, were being maintained in violation of the United States Constitution and the Georgia Constitution's provisions for a fast and speedy trial. Said charges were reinstated in a successful attempt to further delay Plaintiff's parole from the physical custody of the State of Georgia and to harass Plaintiff. Said conduct was also designed to interfere with and  obstruct Plaintiff's efforts to litigate the challenge of his unconstitutional convictions in the State of Georgia and The Northern District of Texas.

The Fulton County charges were dismissed via Nolle Prosequi on August 6, 2021 for the stated reasons that the Atlanta Judicial Circuit was aware of Plaintiff's whereabouts since his arrest in April, 2014 and there was no valid reason the charges, which were brought without probable cause, were not pursued in accordance with the law of the land and, therefore, violated Plaintiff's rights to Due Process. Plaintiff further hereby incorporates by reference the contents of his Notice under the Federal Tort Claims Act, attached hereto as Exhibit A, as submitted to the agencies listed on said Notice for further factual allegations in relation to this claim.

All of the aforementioned conduct by the Defendants was undertaken with the malicious intent to inflict mental and physical harm to Plunkett and to cause his death prior to release from custody.

6.

As Count 6 and the remaining counts, Plunkett hereby incorporates by reference as if fully set forth herein, all of the factual allegations contained within Plunkett's Notice to the Department of Justice, Federal Bureau of Investigation, United States Marshals Service, Federal Bureau of Prisons, Central Intelligence Agency, and the Department of Defense, Department of State and the National Security Agency.

## RELIEF REQUESTED

1. An order requiring all Defendants and all agencies to preserve any and all records related to or concerning Plunkett's claims.
2. An order directing the Defendants to participate in Discovery pursuant to Fed. R. Civ. P. Rule 26.
3. A trial by jury.
4. Damages in the amount of $100,000,000.00 per year of the ongoing conspiracy from the United States for pain and suffering.
5. Damages in the amount of $10,000,000.00 from each individual Defendant for malicious infliction of pain and suffering.
6. Punitive Damages equal to triple the amount of any awarded damages to deter any further such conduct on the part of the agencies and individual actors.
7. A restraining order and injunction enjoining any of the Defendants and anyone acting in concert with any one of them from harassing, torturing, and withholding medical treatment and inflicting any harm whatsoever upon Plunkett. Plunkett requests a preliminary, temporary restraining order as to all Defendants.
8. Order Defendants to pay all costs and expenses of this action.
   For all of the reasons in fact contained herein, Plunkett respectfully requests and prays this Honorable Court GRANT all of the relief requested herein and in Plunkett's Notice pursuant to the Federal Tort Claims Act.

I hereby swear and declare under penalty of perjury that all of the foregoing and aforementioned is true and correct. (28 U.S.C. §1746; 18 U.S.C. §1621).

*Stphn C Plktt 5/11/23 IN BLUE INK*

Respectfully,

*Stephen C Plktt 5/10/23*

Stephen Chris Plunkett, Plaintiff
36265-177
FCC Forrest City - Medium
1400 Dale Bumpers Rd.
Forrest City, AR 72335

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DISTRICT

STEPHEN CHRISTOPHER PLUNKETT      §
                                  §
v.                                §
                                  §
TIMOTHY C. WARD, DAMON HENNINGER ,§
WILLIAM DANFORTH, KASENYA JOHNSON §        CASE NO.
WARDEN DOE (ASMP), CERT OFFICERS  §
DOE (ASMP), CoreCivic, Inc.,      §
MERRICK GARLAND, CHRISTOPHER WRAY §
UNITED STATES MARSHALS SERVICE,   §
JOHN DOE (ASMP), UNITED STATES OF §
AMERICA                           §

APPENDIX TO
SWORN COMPLAINT PURSUANT TO 42 U.S.C. §1983, BIVENS, and FTCA.

NOTICE OF CLAIM PURSUANT TO THE FEDERAL TORT CLAIMS ACT (FTCA)

TO: UNITED STATES DEPARTMENT OF JUSTICE; FEDERAL BUREAU OF PRISONS
    FEDERAL BUREAU OF INVESTIGATION; CENTRAL INTELLIGENCE AGENCY
    UNITED STATES MARSHALS SERVICE    DEPARTMENT OF DEFENSE

RE: STEPHEN CHRISTOPHER PLUNKETT
    MALICIOUS PROSECUTION
    FALSE IMPRISONMENT
    TORTURE
    CRUEL AND UNUSUAL PUNISHMENT
    HARASSMENT

CLAIMANT STEPHEN CHRISTOPHER PLUNKETT HEREBY PROVIDES THIS NOTICE
OF CLAIM PURSUANT TO THE FEDERAL TORT CLAIMS ACT. CLAIMANT PLUNKETT
DEMANDS THE RELEASE OF ALL DOCUMENTS AND COMMUNICATIONS RELATED TO,
OR CONCERNING, THE ABOVE-ALLEGED MISCONDUCT BY UNITED STATES DEPART-
MENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION, AND UNITED STATES
MARSHALS SERVICE EMPLOYEES, DIRECTORS, AND CONTRACTORS OR CONFIDEN-
TIAL INFORMANTS. I  ALSO SEEK MONETARY DAMAGES OF $100,000,000 PER YR.

BEGINNING, AT LEAST, in June, 2019, employees, contractors, and
agents of the above-named agencies, in collaboration with the Georgia
Department of Corrections, CoreCivic, and the Georgia State Board of
Pardons and Paroles, began conspiring to maliciously prosecute, im-
prison, torture and harass me. Employees, contractors and agents of
the above-named agencies maliciously interfered with the parole pro-
cess in the State of Georgia to artificially extend my imprisonment
by years (at a minimum, two years and four months from October, 2019
until February, 2022). Said employees, contractors and agents accom-
plished the goals of this conspiracy by refusing to accept custody of
me from the Georgia Department of Corrections and CoreCivic by action
of the Georgia State Board of Pardons and Paroles in addition to the
use of either agents or confidential informants to surveil, harass,
and interfere with me via both physical and electronic means.

Then, after delaying my parole to physical federal custody from, at
least, October, 2019 to March, 2020, employees, agents and contrac-
tors of the above agencies caused AJC District Attorney Paul Howard
to reinstate stale charges in violation of the Fifth and Sixth
Amendments to the United States Constitution by promising Howard that
if he did so, he would not be prosecuted for the crimes for which
the Department of Justice had him under investigation at that time.
While housed at the Fulton County Jail, employees, agents and con-
tractors of the above-named agencies instructed employees of the
Fulton County Sheriff to obstruct, interfere with, and impede my
United States Mail affecting my access to the courts. Also, while
housed at the Fulton County Jail, after the above-named agencies be
came aware of the effects of COVID-19 on my mother, employees, agents
and contractors of the above agencies instructed employees and con-
tractors of the Fulton County Jail to needlessly expose me to inmates
who had been exposed to the COVID-19 virus by moving me from my hou-
sing unit to a "quarantine" unit where all of the inmates were allow-
ed to interact and mingle with each other.

After repeated exposure needlessly to the COVID-19 virus, and only

EXHIBIT A - PLUNKETT V. WARD

exhibiting mild symptoms, the agencies decided that strategy would
not work. At that time, the above-named agencies became aware that
I made Georgia Open Records Act requests with the Forsyth County
Sheriff's Office and instructed the Forsyth County Sheriff's Office
to ignore my Open Records Act requests because proper response to my
requests would have revealed wrongdoing by Department of Justice em
ployees in relation to my arrest and prosecution by Forsyth County
and the United States Attorneys' Offices for the Northern Districts
of TExas and Georgia. Then, in September, 2020, the above-named agen-
cies instructed the AJC District Attorney's Office to suborn perjury
of Forsyth County Sheriff's Office Lieutenant Augusto Sesam. The
above-named agencies, through unknown employees, agents and contrac-
tors, instructed Sesam to testify that there was no dash cam on the
night of my arrest and that Sesam wrote no report recording the ar-
rest. Said testimony was a lie as documented by records produced sub-
sequently by the Forsyth County Sheriff's Office.

Nevertheless, I was able to have the stale charges, which originated
as federal charges, dismissed on August 6, 2021. In the interim, be-
tween the perjured testimony on September 16, 2020 and August 6, 2021
dismissal, my #16 3rd molar broke off to the gum on February 4, 2021.
Employees, agents and contractors of the above-named agencies instruc-
ted medical and dental staff   at the Fulton County Jail and Grady
Memorial Hospital to remove the tooth without placing me under gene-
ral anaesthesia because the employees, agents and contractors of the
above-named agencies knew of my allergy to local anaesthesia and its
effects on me of shock and cardiac crash. This left me with the
choice of continuing to endure immense pain or risk possible death
by being injected with drugs to which I am allergic. It is possible
that the #16 3rd molar bears some relation to the electronic harass-
ment experienced by me in the ensuing months while housed at Coffee
Correctional Facility, Augusta State Medical Prison, Johnson State
Prison, and the Emanuel County Jail.

To this day, at every facility at which I have been housed, there has
been a complete refusal to remove this tooth, and the other infected
next to it, under the proper standard of care in an attempt to have
me consent to injection of drugs to which I know, and is proven, I
have severe allergic reaction resulting in possible death. Upon my
return to Coffee Correctional Facility, employees, agents and con-
tractors of the above-named agencies continued to have my parole de-
layed by instructing the Dallas County Sheriff's Office to place a
detainer upon my Department of Corrections file the placement of'
which caused my parole to be cancelled on October 13, 2021. Then, my
parole date was reset for December 1, 2021. At that time, beginning
in November, 2021, employees, agents, and contractors of the above-
named agencies began once again to attempt to reinforce false narra-
tives through the use of surreptitious electronic communications and
surveillance by both physical speech parroting via staff and inmates
at Coffee Correctional Facility either employed by or contracted with,
the above-named agencies as well as direct electronic communications
with me via unknown methods and technology. These communications
caused me to believe that my life was in danger and the lives of my
family members were also in danger.

Then, after discovery of what I believed to be a "bug" or surveillance

device in my cell, #218 in Unit 1-B at Coffee Correctional Facility, the communications from the above-named agencies and their employees and contractors began their latest attempt to cause me to appear suicidal and insane. These communications stated that I would be granted a Presidential Pardon and released from prison if I would agree to become an FBI agent. At that time, I was being held incommunicado from the outside world and, therefore, could not verify or check any of the information I was being given. I was told by the above-named agencies, their employees agents, or contractors that all that I had to do was tell the officer on duty, Officer Clay, on November 21, 2021, that I wanted to kill myself. I was told that once I did that, I would be escorted through medical and all of my family was waiting on me outside for my release and I would begin my new life as an FBI agent. I was then, instead, escorted, according to the plan of the above-named agencies, to a "suicide" cell where I could not flush the toilet or access my own drinking water.

Once in this cell, #101 in the "Old Seg" section of Coffee Correctional Facility, I was told that the "State of Georgia does not want to release [me]." I was psychologically tortured from that point forward by repeatedly being told that I had to "clean my DNA" from the cell. Therefore, I had to keep the cell wet. I had to wet my clothes. The cell was kept freezing cold. I was then told that various FBI Directors, Regina Diane Low (who was oddly my ex-girlfriend), Elizabeth DeJesus-Grijalva (who was allegedly my ex-wife Elizabeth Miranda Rangel with a changed name due to her position with the FBI), "Liz" Turner (who through electronic communications stated that I was "too fat to be an FBI agent." I was subjected to classic CIA-style psychological torture: extreme temperatures, body shaming, stress positions. But this torture had a twist. Strangely, through these false narratives and information, the employees, agents and contractors of the above-named agencies were able to convince me to participate in my own torture. Looking back, it is classic carrot and stick whipsaw emotional and psychological torture techniques but carried out with new technology and methodology to gain the acquiescence of the target. While I was information-starved, it was very effective and very dangerous.

I was told that Coffee Correctional Facility was trying to poison me. Therefore, I could not eat any of my food. I was told this was being done because I was the son of President Joe Biden (illegitimate) and the State of Georgia hated my "father." I was told that I saved the world and that I was due BILLIONS of dollars from the United States Government. I was told this happened when the Challenger disaster happened in 1986. Whoever of the employees, agents and contractors of the above-named agencies was responsible for this had access to very personal and likely unknown to almost everyone type information, including the fact that I was not at school on the date of the Challenger disaster. I was told the reason that I was withheld from school that day was because "they" did not want to take the chance that I recognized that I had "seen" the disaster before it happened. I have no recollection of ever "seeing" the disaster before it happened, so I assume this was another one of the false narratives designed to cause it to appear that I had delusions of grandeur just like the false narrative that I was the son of President Joe Biden. These same type false narratives continued to be put forward by the employees, agents,

and contractors of the above-named agencies and I was told that the
United States Army was going to break me out of Coffee Correctional
Facility by breaking through the wall of my cell with a tank. I was
told that I needed to wet my entire cell down to cleanse my DNA once
again and that I had to cover up with the mattress from the bed so
that I would not be harmed when the tank busted through the wall.

Then, on December 1, 2021, which was my scheduled parole date, I was
told that FBI agents cannot have handcuffs placed upon them by anyone
"but the FBI Director." Therefore, "do NOT allow them to place hand-
cuffs upon you."

After a few attempts to convince me to be handcuffed for transport,
I acquiesced and allowed myself to be handcuffed when I began to truly
realize that your employees, agents, and contractors were engaged in
a psychological torture scheme designed to harass, cause harm both
physically and mentally, and cause my continued imprisonment in the
State of Georgia through disinformation and misinformation after the
false reinstatement of the Fulton County charges failed. I was then
taken to the Intake Section of Coffee Correctional Facility where a
person whom Coffee Correctional Facility staff claimed was a Deputy
U.S. Marshal was leaving the Intake Section. That person had on a gold
five-pointed star badge displayed via lanyard around his neck. The man
was Afican-American and stated "thanks, Sarge" as he left the Intake
Section of Coffee Correctional Facility.

All of my legal mail and legal work were transported with me to the
Intake Section of Coffee Correctional Facility that day at the behest
of employees, agents and contractors of the above-named agencies. Also
at the behest of employees, agents and contractors of the above-named
agencies, I was never to see my legal mail and legal work again in an
effort to block my 1st Amendment right to Access to the Courts for re-
dress of grievances with the Government.

After a time in the Intake Section holding cell, I was told by "Capt.
Kasenya Johnson, Shift Supervisor," likely an employee, agent, or con-
tractor of the above-named agencies, that "the U.S. Marshals left with-
out you because you were acting up." I was then told that my parole
date was once again cancelled. Then, at the behest of employees, agents,
and contractors of the above-named agencies, Kasenya Johnson sprayed
me with OCR (Oleo Capsaicin Resin) Spray while I was handcuffed inside
the intake section holding cell. I lost my breath and then began to
burn. I was escorted back to cell #101 without being seen by medical
or even being offered decontamination at the behest of employees,
agents, and contractors of the above-named agencies. Then, I was left
in the same contaminated clothing to suffer for the next several days
as the effects of the OCR spray wore off on their own.

Then, on December 10, 2021, I was once again told that I had to cuff
up by Kasenya Johnson. But Kasenya Johnson would not tell me where I
was going. Then, Kasenya Johnson, who interestingly enough, was the
same "Captain" who was directly responsible for placing me on "sui-
cide watch" in November, 2019 as I was awaiting parole at that time,
deployed OCR Spray on me once again but with a device with much grea-
ter force and pressure. It appeared Kasenya Johnson was attempting to

kill me with the spray being aware, and the employees, agents, and contractors of the above-named agencies being aware, that I have chronic cardio-pulmonary issues including high blood pressure, history of mycardial infarction, asthma, and chronic respiratory infection with a history of pulmonary embolism. If the employees, agents, and contractors of the above-named agencies were aware that I was absent from school on January 28, 1986, then certainly they were aware of my medical history.

After Kasenya Johnson once again deployed high pressure OCR gel foam **spray on me** while I was inside a locked cell, CoreCivic employees, including C.O.'s Hargrove, Sailem, and Captain Johnson assaulted the cell with riot gear and shields. When I got on the ground at their direction, the assailants then bagan rubbing the OCR spray all over my shirtless torso in an effort to compound the damage. I was hand-cuffed, and then a shirt was placed over my torso over my arms and hand-cuffs acting as a sort of straight jacket. I was immediately escorted to a transport van by C.O.'s Hargrove and Rickutson, who was also part of the assault squad. They were accompanied by "Counselor" Clements who stated, "I think we made a good decision doing this." I was placed in the back of the transport van, still soaked in OCR Spray all over my body. I was then taken on some sort of a circuitous, roughly three-hour trip to a facility which was known to me a Augusta State Medical Prison.

Once in the intake section of Augusta State Medical Prison, I was not offered any "decontamination." I was processed in with the very same OCR-soaked clothes at the direction of the employees, contractors, or agents of the above-named agencies. I was placed in CSU, or Crisis Stabilization Unit cell #107. While at this facility, the electronic harassment and torture continued. It was communicated to me various versions of the same theme... I had been appointed to some position in the Government by Joe Biden who was being represented as my biological father, due to my legal acumen, varying from Assistant United States Attorney all the way up to Attorney General of the United States. And because of this, I could not be hand-cuffed by anyone but the FBI Director who was again represented to be various individuals from my ex-girlfriend, Regina Diane Low to Elizabeth DeJesus-Grijalva(assuming the spelling). Elizabeth DeJesus Grijalva was represented to be two different individuals. The first is my ex-wife, Elizabeth Miranda Rangel. The second was the wife of my former friend, Darren Harvey, Elizabeth Harvey. It was represented that Darren Harvey had gone to work for the FBI "in 2012 after [he] left LRG," which was a business for which I consulted in 2011.

All of these representations were made with the goal of creating delusions of grandeur or the appearance of these types of delusions to the staff of Augusta State Medical Prison as it was communicated to me that I needed to inform the staff of Augusta State Medical Prison of the various "presidential appointments." Again, during all of this time I was held incommunicado from my family or the outside world. This was done by the above-named staff of GDC and Augusta State Medical Prison at the direction of employees, contractors, or agents of the above-named agencies in order to maintain their ability to deceive me as I could not verify any of the information I was being given.

As a part of the delusions of grandeur scheme perpetrated as a torture method in order to attempt to induce self-harm or thoughts of self-harm or the appearance thereof, as mentioned earlier in this claim, the 1986 Space Shuttle Challenger disaster was used as a narrative to attempt to cause me to believe that "[I] saved the world." This narrative communicated through the surreptitious electronic communications through unknown means, but verified by me to have originated from outside of my own mind. I verified this by placing ear plugs deep within my ears and immobilizing my ear drum. When this was done, I heard **NOTHING**. Not a thing. Zero. Zip. Zilch. Nada. Therefore, these communications MUST have originated from outside of my mind. I did this as, in the beginning, the plot carried out by the employees, contractors, and agents of the above-named agencies was working. I was beginning to question my own sanity. I was beginning to think that, despite a very deep knowledge of myself and never having experienced anything REMOTELY similar, maybe I was hearing things. However, once I placed the ear plugs deep within my ears to immobilize my eardrums, and the world went quiet, and I was left with NOTHING but my own thoughts which did NOT include ANY of the aforementioned narratives, I knew and determined what exactly was going on. It is still a mystery to me as to why. I cannot figure out, other than my ongoing litigation with the above-named agencies, which pre-dated the beginning of at least the Coffee Correctional acts in 2021 and the Augusta State Medical Prison acts, why the above-named agencies had targeted me for this torture.

Then, once I confirmed that what was being conveyed to me was both detrimental to me and had its genesis outside of me, I no longer "played along." However, before I stopped "playing along," I was once again led to refuse to be hand-cuffed by it being communicated to me that I could only be hand-cuffed by the FBI Director. On or about January 6, 2022, I was told that I was being moved from CSU cell 107 to a general population unit at Augusta State Medical Prison by Augusta State Medical Prison C.O. Lollis. However, prior to my verification that the communications I was receiving electronically were indeed just that and were acting against my best interests, it was communicated to me that I could not enter general population as I was the son of the president, Joe Biden. I was told that in order to be an FBI agent, or US Attorney, which was what "[my] father wanted," since I had already been OCR sprayed, all I needed to do was to be "tazed" as all FBI Agents, and US Attorneys who must attend the FBI Academy, must be both OCR sprayed and tazed. Accordingly, I was told by the communications that I could not be hand-cuffed and I would be tazed and then I would be released to live my new life of Government service and "get Elizabeth DeJesus-Grijalva off of my mind." This last phrase was used over and over by the torturous communications. According to those instructions, and without any way to verify that the information I was being given was false, I refused to be moved to the general population unit. I was then told I was going to be placed in segregation and to be placed in segregation I had to be hand-cuffed.

I then, as instructed by the electronic communications, refused to be hand-cuffed. C.O. Lollis then called a "CERT team." The John Doe CERT team officers appeared in front of CSU Cell 107. One of the John Doe CERT team officers came to my door and told me that he would first spray me with a high-concentration OCR spray, then shoot me with his

tazer, then "crack my head open like an egg" with his baton which he then tapped on the plexi-glass door portion of my cell. This was then egged on by a tall unknown white male in plain clothes. He stated "Look at him. He's shaking like leaf. Do whatever you need to do." When I refused to allow them to place hand-cuffs on me, the tall white unknown male then instructed the "CERT" team officers to spray me. The "CERT" team officers complied with that instruction and opened the food slot in my door. I turned my back and walked away. When I did, the "CERT" team officer placed a large spray can in the slot and sprayed me with what I came to realize was a very high concentration pepper spray/mace. This spray was MUCH stronger than anything with which I had been previously sprayed according to this torture scheme.

My lungs began to burn intensely and I began to have chest pains. I immediately told the unknown individuals that I would comply, They then purposefully delayed opening the food slot and caused me to breathe even more of the dangerous spray. By the time he opened the food slot to place the hand cuffs on my wrists, I could barely stand and the chest pains were severe. I placed my hands behind my back and through the slot. He then clamped the cuffs on my wrists as forcefully as he could cutting off the circulation to my hands immediately and causing severe pain to my wrist bones. I had bruises on my wrists for days following these events. Once the door was fi nally opened and I was removed from the cell, the unknown individuals then "winged me up" meaning that their arms, one on each side, were placed through mine and my arms were elevated behind me almost lifting me off of the floor. This caused excruciating pain to my shoulders which already suffered from prior injuries from sports left untreated.

It was at this time that I collapsed and could not walk on my own. I informed the unknown individuals that I was, I believed, experiencing a heart attack. They did not care. In fact, this seemed to only cause joy and smiling. As they carried me with my arms winged up down the hallway, they were intentionally stepping on my bare feet with their jack-boots.

Once we reached the  "medical" department, I was placed on a scale by the unknown individuals slamming my head up against the wall with my arms still winged up behind me. At the time, I estimate my weight was likely about 210 pounds. The weight on the scale indicated 167. Accordingly, the unknown individuals were placing upward force on my winged up arms while holding me against the wall which resulted in my weight being underreported by approximately 43 pounds. I was then taken to segregation where I was placed in the cell with no shower and no detoxification while covered in the high-concentration spray/mace. I was forced, once again, at the instruction of the Department of Justice, to endure DAYS of agony while the spray/mace's effects wore off. As the Department of Justice and the Georgia Department of Corrections were aware of my history of cardiac disease and lung issues, this was done in an effort to cause heart and lung injury which would result in death.

Several days later, I was packed up and moved to Johnson State Prison where more of the same torturous conduct occurred at the direction of the above-named agencies through employees, contractors and agents of the above-named agencies. It was at this facility that I finally determined to not pay any  attention to either the verbal or electronic surreptitious communications or the situational manipulation which was going on at the hands, and at the direction, of employees, angents, and contractors or sources/informants of the above-named agencies.

At Johnson State Prison, the denial of substantive medical treatment continued at the hand, and at the direction, of employees, agents, contractors or informants/sources of the above-named agencies. A "Doctor A," an African doctor refused to even consider looking at the lesion on the back of my leg. He refused to hear any complaints or diagnose my prostate/colorectal issues. He refused to properly look at or diagnose my ECG results. He ordered me out of his office. I complied. I filed a complaint with the Warden and Medical Director.

Another parole date was set by the Georgia State Board of Pardons and Paroles for February 23, 2023. All of my prior parole dates had been cancelled at the direction and request of employees, contractors, agents and/or informants/sources of the above-named agencies. This date, however, was finally honored. On that date, I was turned over to deputies with the Emanuel County (GA) Sheriff's Office and was transported to the Emanuel County Jail where more of the same conduct continued through employees, agents, contractors, informants/sources of the above-named agencies.

However, once the above-named agencies realized that I was not going to continue responding to their attempts at auditory and situational torture, the auditory portion stopped. I had written the Honorable Michael Horowitz, the Inspector General for the Department of Justice in February, 2023 from Johnson State Prison and informed him of these actions and conduct of the above-named agencies. I also filed a complaint in the United States District Court for the District of Columbia related to this attempt at torture of a United States Citizen.

The above-named agencies, and their employees, contractors, agents, and/or informants/sources have worked in conjunction with the United States Postal Service to censor, obstruct, impede, open, read, redirect, and stop my United States Mail in violation of the First and Fifth Amendments to the United States Constitution and other laws of the United States as well as the Fourth Amendment to the United States Constitution's provision for unreasonable searches and seizures of my papers and effects. This was also done upon my original transfer from the State of Georgia through Crisp County (GA) Sheriffs when I handed over all of my papers and property to be mailed home to Texas to my family. These papers included poems and songs written by me as well as designs for exercise equipment I invented while incarcerated in Georgia as well as all of my legal work from Georgia in relation to a "state" Bank Robbery charge which was prosecuted at the direction of the Department of Justice and the Federal Bureau of Investigation. Evidence of such interference with my mail has been submitted to the United States District Court for the District of Columbia in Case No. 1:21-CV-1232 and the United States District Court for the Eastern District of Arkansas with a Case No. TBD at the time of the writing of this Notice. Evidence of interference with my mail has also been submitted to the United States District Court for the Northern District of Texas and the United States Court of Appeals for the Fifth Circuit in addition to the Inspector General for the Department of Justice.

This interference with my mail has been ongoing since, at least, December 2017 after I was unconstitutionally sentenced in the Northern District of Texas. It continues to this very day at the direction of the employees, agents, contractors, informants/sources of the agencies listed above and with the assistance of employees, agents, contractors, informants/sources

working for, planted in, and in the custody of the Federal Bureau of Prisons in addition to the Agencies listed above. The denial of all substantive medical treatment at the direction of employees, agents, contractors, informants/sources of the agencies listed above and in concert with employees, agents, contractors, informants/sources of the Federal Bureau of Prisons. I have been both initially placed in, and wrongfully and against agency policy held, at an institution which never did, nor does currently, match my scored security level or my institutional profile in an effort to place me in an environment which is both more violent and more violative of my liberty interests in furtherance of the conspiracy to torture and injure me resulting in my death. All of the above conduct was undertaken with the express purpose of depriving me of my life, liberty and property in violation of the Constitutions of the United States, the State of Georgia, the State of Texas and the State of Arkansas as well as applicable law, including the Federal Tort Claims Act and the Civil Rights Act, Privacy Act, Electronic Communications Act, laws against torture and intentional inflictions of physical and mental pain and anguish and criminal and civil conspiracy laws including conspiracy to cause wrongful death and commit murder. All of the above conduct by the employees, agents, contractors, informants/sources of the above and herein listed agencies was undertaken with malice aforethought and specific intent to cause both mental and physical injury and, ultimately, death.

In addition to $100,000,000.00 per year from the United States, I seek $10,000,000 personally from each and every individual employee, agent, contractor, informant/source of any of the above or herein listed agencies including the Directors of any agency involved and the Attorney General of the United States and any Deputy, Assistant, Deputy Assistant, Chief Deputy Assistant, Chief Assistant, Assistant Chief Deputy Assistant, Associate, Assistant Associate, Chief Assitant Associate, Chief Deputy Assistant Associate Attorney General, Attorney Colonel, Attorney Major or the like, including any individual United States Attorney or any of his or her assistants, etc... who had any knowledge of this operation or any involvement in this operation to include any former holders of any such office in both his or her official and individual capacities.

I do hereby swear and declare that all of the foregoing is true and correct to the best of my knowledge. (28 U.S.C. §1746; 18 U.S.C. §1621).

Respectfully submitted this 10th Day of May, 2023.

Respectfully,

Stephen Chris Plunkett, Claimant
36265-177
FCC Forrest City - Medium
1400 Dale Bumpers Rd.
Forrest City, AR 72335

9 of 9

Dear Clerk,                                            May 11, 2023

    I hope this communication finds you doing well. Enclosed you will find my complaint with appendix under Bivens, 42 U.S.C. 1983, and the FTCA encompassing a civil, and  possibly criminal, conspiracy. I have also enclosed the forms for Filing In Forma Pauperis. As I currently do not have regular daily access to my counselor and cannot obtain the required account statements and certifications, I have omitted those at this time. However, as soon as those documents are provided to me, I will supplement this filing with same.

    I recently filed with your office, which is referenced within this filing, a Petition under 2241 for injunctive relief because some of the allegations in that Petition affect my liberty and ability to be placed in home confinement and, therefore, would have the effect of shortening my confinement. I mailed that filing Certified, Priority on May 9, 2023. You may have, or should have, already received that filing by the time of your receipt of this filing.

    Should the Court determine, in its discretion, that the claims from the two actions should be joined, I have no objection to that determination as they are really  all interrelated.

              Respectfully,   *IN BLUE INK*

                    *5/11/23*

              Stephen Chris Plunkett , Plaintiff
              Pro Se
              36265-177
              FCC Forrest City - Medium
              1400 Dale Bumpers Rd.
              Forrest City, AR 72335

CC: File
Enc: Complaint, Court Forms, IFP Forms

P.S. When you send me mail related to my cases, please include the statement
    on the outside of the Envelope "Legal/Special Mail - Open Only in
    Presence of Inmate." Otherwise, this facility will open and read any
    mail from any court of the United States and probably copy it as well.

    Also, please acknowledge receipt of my filings due to the neverending
    mail issues I experience due  to the Defendants' interference with my
    USPS mail.



CERTIFIED MAIL

PRESS FIRMLY TO SEAL

7022 2410 0001 1453 2822

U.S. POSTAGE PAID
FOREST CITY, AR

$0.00

**UNITED STATES POSTAL SERVICE** ® | **PRIORITY**® MAIL

FROM: Stephen Plunkett
36265-177
FCC Forrest City - Medium
1501 Dale Bumpers Rd.
Forrest City, AR 72355

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

*SPECIAL LEGAL MAIL* TO BE OPENED BY ADDRESSEE ONLY

TO: Ms. Tammy Downs
Office of the Clerk
United States District Court
Eastern District of Arkansas
600 W. Capitol Ave.
Suite A-149
Little Rock, AR 72201-3325

**FLAT RATE ENVELOPE**
ONE RATE ■ ANY WEIGHT

**TRACKED ■ INSURED**

Return Receipt

PS00001000014   EP14F July 2022
OD: 12 1/2 x 9 1/2